## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

GEORGIA FOSTER-JENKINS f/k/a )
GEORGIA FOSTER, and STEVE )
JENKINS, )
                            )
         Plaintiffs, )
                            )     No:
v. )
                            )
ROGERS AUTO GROUP, INC., an Illinois )
Corporation and CONSUMER )
PORTFOLIO SERVICES, INC, a )
California Corporation, and NORTHWEST )
PREMIUM SERVICES INC., an Illinois )
corporation, )
                            )
         Defendants. )
_____/

## COMPLAINT

       NOW COMES Georgia Foster-Jenkins and Steve Jenkins (collectively, "Plaintiffs") by

and through their attorneys, and for their Complaint state as follows:

### Statement of the Case

       1.       This is an action for violations of numerous consumer protection laws as they

relate to the sale and financing of a car, the sale and financing of insurance, and the wrongful

repossession of a vehicle.

### Jurisdiction and Venue

       2.       15 U.S.C. §1681p grants any United States District Court jurisdiction to hear an

action arising under the Fair Credit Reporting Act. 15 U.S.C. §1640(e) grants any United States

District Court with jurisdiction to hear a violation of the Truth In Lending Act ("TILA"). Thus

this Court is vested with jurisdiction. This Court has supplemental jurisdiction over state claims

that are so related they form part of the same case or controversy pursuant to 28 U.S.C. §1367.

1

3.      Venue in the United States District Court for the Northern District of Illinois is proper under 28 U.S.C. §1391(b) because Defendants transact business in this district and because a substantial part of the events in this case take place in this district.

## PARTIES

4.      Georgia Foster-Jenkins, formerly known as Georgia Foster ("Georgia"), and Steve Jenkins ("Steve") are natural persons over the age of 18.

5.      Rogers Auto Group, Inc., formerly known as New Rogers Pontiac Inc., ("Rogers Auto") is an auto dealership formed under Illinois corporate law.

6.      Consumer Portfolio Services, Inc. ("CPS") is a corporation formed under California law that finances car sales. On information and belief, CPS has developed an automated system that determines whether to approve loans automatically giving car dealerships an instant response to the credit applications.

7.      Northwest Premium Services, Inc. ("Northwest Premium") is a corporation formed under the laws of Illinois and is domesticated in Illinois. On information and belief, Northwest Premium is a premium finance company.

## FACTS COMMON TO ALL COUNTS

8.      In early 2018, Rogers Auto mailed Georgia an advertisement stating it had a program that gave potential car buyers a fresh start after leaving bankruptcy.

9.      Induced by the advertisement, Georgia visited Rogers Auto.

10.     On information and belief on or about January 25, 2018, Rogers Auto attempted to obtain financing for Georgia. Georgia was unaware of Roger Auto's attempts to obtain finance and did not consent to it.

11.     Georgia first arrived at Rogers Auto on or about January 26, 2018. There she selected a 2014 Buick Lacrosse, 4-door with Vehicle Identification Number

1G4GB5G3XEF236791 ("Car" or "Buick LaCrosse"). The Car was advertised on the Roger's Auto lot for the purchase price of $20,163.00.

12.     On or about January 26, 2018, Georgia executed a Retail Installment Sales Contract ("RISC") and Purchase Order for the Car which set forth the cash delivery price, as well as tax, license, registration and related costs and fees. *See* Exhibit A.

13.     As part of the purchase, Georgia made a $1,200 payment to Rogers Auto. Rogers Auto applied $1,000 to the Retail Installment Sales Contract in accordance with the terms of the Retail Installment Sales Contract. On information and belief, Rogers Auto paid $200 to other entities on Georgia's behalf.

14.     Additionally, Georgia executed an Illinois Secure Power of Attorney instrument appointing Rogers Auto as attorney-in-fact to review title documents, acknowledge odometer disclosures and sign all documents required to secure Illinois Title.

15.     On information and belief, after Georgia purchased the Car, Rogers Auto or an agent thereof submitted the required forms fully executed to the Illinois Department of Revenue disclosing the sale and transfer. *See* Exhibit B.

16.     At the time Georgia bought the Car, the RISC had already been assigned to CPS.

17.     Like every other car owner, Georgia had an Application for Vehicle Transaction showing her as owner of a car. *See* Exhibit C. And, like most, she had a creditor: CPS. *Id*.

18.     Georgia behaved like every other car owner. Like others in Chicago, she had her Car registered with the City of Chicago and had to pay for city stickers to put on the car.

19.     Like everyone else, Georgia had to buy car insurance. But she could not afford to pay for the full costs of insurance up-front. She made a down payment and obtained financing for the remainder of the insurance policy from Northwest Premium Services, Inc. which set forth

the total premiums, cash down payment and finance charges with an annual percentage rate of 41.75%. *See* Exhibit D. The effective date of the vehicle insurance policy was January 27, 2018.

20.     The Car was primarily used for personal purposes, not business purposes.

21.     Steve did not sign the RISC or Purchase Order for the vehicle or verbally agree to purchase the Car. Nor did he authorize any credit checks related to financing the Car.

22.     Georgia believed that she had purchased the Car.

23.     About two weeks later, Georgia received a phone call from Rogers Auto. An employee told Georgia that they were unable to obtain financing for Georgia. Rogers Auto then began asking Georgia for more interest and more money up front. On information and belief, the purpose of this was to make more money off of a sale of the car loan.

24.     Georgia refused to pay more money up front or a greater amount in interest.

25.     Rogers Auto then applied for numerous loans on Georgia's behalf to obtain financing for the Car.

26.     Rogers Auto even applied for credit on Steve's behalf.

27.     After Georgia and Steve had the car a month, an unknown man ("John Doe #1") came to Georgia's home intending to repossess the Buick Lacrosse. He announced himself as a sheriff who worked for Maywood.

28.     He intimidated Georgia and at all times either acted under color of law or presented himself as acting under color of law.

29.     John Doe #1 got into a heated argument with Georgia about the repossession of the car.

30.     As John Doe #1 and Georgia argued, an unknown person ("John Doe #2") believed to be working in tandem with John Doe #1, parked his car in front of the driveway boxing the Car in the driveway. This prevented Georgia and Steve from leaving.

31.     Initially Georgia refused to allow him to repossess the car. He told her if he had to tow the car the cost of towing would be deducted from her down payment, apparently referencing funds she deposited when she purchased the Buick Lacrosse.

32.     At that point, John Doe #1 took the key from Georgia and drove the Car back to Rogers Auto with both Georgia and Steve inside it.

33.     Georgia and Steve were frightened, embarrassed, humiliated and suffered mental anguish as a result of this wrongful repossession and intimidation.

34.     On information and belief, John Doe #1 and John Doe #2 were acting as agents of CPS.

35.     At no point did Georgia default on her obligations under the RISC or Purchase Order.

## COUNT I
### Georgia Foster v. Rogers Auto
### Consumer Fraud

36.     All previous paragraphs are restated and incorporated as if fully set forth herein.

37.     815 ILCS §505/2 prohibits deceptive, unfair, and unconscionable acts.

38.     The Car was used for personal use.

39.     On or about January 25, 2018, Rogers Auto applied for credit on behalf of Georgia Foster to two loans: Regional Acceptance Corp. and Global Lending Services, LLC.

40.     Georgia was not aware of these credit pulls nor did she consent to them.

41.     These applications resulted in "hard pulls" on Georgia's credit that caused Georgia's credit to dip.

42. On information and belief, Rogers Auto sold the RISC and Purchase Order to a financing source: CPS. But after Georgia signed the RISC, Purchase Order and paid the down-payment, Rogers Auto told her that it did not obtain financing. On information and belief, Rogers Auto acted in order to make more money in a new contract with a higher interest rate or down payment.

43. Rogers Auto then applied to numerous financing companies on Georgia's behalf in the month of February. These include but are not limited to: A) Westlake Services, LLC; B) Santander Consumer USA, Inc.; D) Americredit Financial Services, Inc. d/b/a GM Financial; E) Ally Financial, Inc; F) Mechanics Bank, Corp.; G) Flagship Credit Acceptance, LLC; H) Crescent Bank & Trust, Inc.; I) Prestige Financial Services Corporation; G) Tidewater Motor Credit, Corporation; I) Capital One Auto Finance, Inc.; and J) Exeter Finance, LLC.

44. At the time the sale was completed, however, Rogers Auto had already assigned the loan to Consumer Portfolio. See Exhibit A.

45. Rogers Auto applied to at least 10 financing companies on Georgia's behalf. This lead financing companies to conduct "hard" credit pulls hurting Georgia's credit.

46. This course of conduct is unfair, unconscionable and deceptive in the course of trade or commerce in violation of 815 ILCS §505/2.

47. Georgia has been damaged by Rogers Auto's actions because Rogers Auto hurt her credit. In fact, Georgia received a credit denial based in part on these credit inquiries.

48. Rogers Auto's conduct is willful and should be punished.

49. This conduct occurred in the course of trade or commerce.

Wherefore, Plaintiff Georgia Foster respectfully requests the Court to enter judgment against Rogers Auto Group, Inc. and to enter an order awarding:

A.     Actual damages, the amount of which to be determined at trial;

B.     Attorney's fees and costs pursuant to 815 ILCS §505/10a;

C.     Punitive damages, the amount of which to be determined at trial; and

D.     Such other relief as this honorable court deems just and appropriate.

## COUNT II
### Steve Jenkins v. Rogers Auto
### Consumer Fraud

50.     Paragraphs 1-35 are restated and incorporated as if fully set forth.

51.     Between January and March 2018, Rogers Auto applied to at least six financing companies on Steve Jenkin's behalf to finance the car. These included 1) Santander Consumer USA, Inc.; 2) Global Lending Services, LLC; 3) Ally Financial, Inc; 4) Mechanics Bank, Corp.; 5) Flagship Credit Acceptance LLC; and 6) Westlake Services, LLC.

52.     Steve Jenkins neither consented nor wanted Rogers Auto to attempt to obtain financing on his behalf.

53.     Rogers Auto applied for loans on his behalf without his consent which is unfair, unconscionable and deceptive in violation of 815 ILCS §505/2.

54.     This conduct occurred in the course of a trade or commerce.

55.     Steve suffered damages because the credit inquiries hurt his credit score.

56.     Rogers Auto's conduct is willful and should be punished.

Wherefore, Plaintiff Steve Foster respectfully requests the Court to enter judgment against Rogers Auto Group, Inc. and to enter an order awarding:

A.     Actual damages, the amount of which to be determined at trial;

B.     Attorney's fees and costs pursuant to 815 ILCS §505/10a;

C.     Punitive damages, the amount of which to be determined at trial; and

D.     Such other relief as this honorable court deems just and appropriate.

## COUNT III
### Georgia Foster v. CPS
### Breach of Contract

57. Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

58. Georgia executed the RISC and Purchase Order and paid the down payment in accordance with the RISC. See Exhibit A.

59. The RISC was assigned to CPS. *Id.*

60. CPS repossessed the Car before the first payment was due.

61. This conduct constituted a breach of the contract it was assigned.

62. Georgia was damaged by CPS's breach.

63. Any condition precedent to bringing this action has been satisfied or waived.

Wherefore, Georgia Foster respectfully requests that this Honorable Court enter judgment against Rogers Auto Group, Inc. and to enter an order awarding:

A. Actual damages, in an amount to be determined at trial;

B. Costs; and

C. Such other relief as this honorable court deems just and appropriate.

## COUNT IV
### Steve Jenkins v. Rogers Auto
### Violation of the Fair Credit Reporting Act

64. Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

65. Steve is a "consumer" as defined by 15 U.S.C. §1681a(c).

66. Rogers Auto is a person as defined by 15 U.S.C. §1681a(b).

67. The FCRA prohibits any person or entity from obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. 15 U.S.C. §1681b(f).

68. On or about February 7, 2018 Rogers Auto accessed Steve's Credit Report without his permission and without any permissible purpose.

69.     On information and belief, Rogers Auto accessed Steve's credit report to obtain financing for Jenkins, despite no authorization from Jenkins to obtain financing or otherwise review his credit.

70.     Steve never applied for a loan, nor did he consent for Rogers Auto to obtain financing on his behalf.

71.     Rogers Auto willfully violated §1681b(f) when it accessed Steve's credit report without any permissible purpose under the FCRA. On information and belief, the purpose of this credit pull was to obtain financing for a car that Steve had no interest in buying.

Wherefore, Plaintiff Steve Jenkins respectfully requests that this Honorable Court enter judgment against Rogers Auto Group, Inc. and for an order awarding:

A.     Actual damages, in an amount to be determined at trial;

B.     Statutory damages pursuant to 15 U.S.C. §1681n;

C.     Punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

D.     Costs and reasonable attorney's fees as provided in 15 U.S.C. §1681n; and

E.     Such other relief as this honorable court deems just and appropriate.

### COUNT V
### Georgia v. CPS
### Wrongful Repossession

72.     Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

73.     §9-503 of the Illinois Uniform Commercial Code states that: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

74.     The Car was a consumer good.

75. Georgia was not in default—the first payment was not even due at the time the car was repossessed.

76. CPS breached the peace by hiring John Doe #1 who either acted under color of law or pretended to be a sheriff acting under color of law.

77. CPS breached the peace by hiring John Doe #2 who blocked the driveway and prevented Georgia and Steve from leaving.

78. Article 9 of the Illinois Commercial Code provides that a secured party has the right to repossess the goods only if the debtor is in default and if the repossession occurs without a breach of peace.

79. CPS, through John Doe #1 and John Doe #2, violated Article 9 of the Illinois Commercial Code by committing a breach of peace and by repossessing when Georgia was not in default.

80. On information and belief, John Doe #1 and John Doe #2 were acting as agents of CPS.

81. Georgia Foster was damaged by John Doe #1 and John Doe #2's actions.

82. CPS's actions are willful and deserve to be punished.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Consumer Portfolio, Inc. and for an order:

A. Awarding actual damages in an amount to be determined at trial;

B. Awarding statutory damages;

C. Awarding punitive damages; and

D. Awarding such other relief as this honorable court deems just and appropriate.

## COUNT VI
### Georgia v. CPS
### Violation of Illinois Consumer Fraud

83.     Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

84.     By hiring someone who either was a sheriff acting under actual color of law or pretended to be a sheriff acting under color of law to repossess the Car, CPS acted unfairly, unconscionably, and deceptively in violation of 815 ILCS §505/2.

85.     815 ILCS §505/2 incorporates Section 2 of 815 ILCS 510 which states that:

    a.  A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
1. passes off goods or services as those of another;
2. causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
3. causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
12. engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

86.     Georgia was mislead because she thought John Doe #1 might have been a sheriff.

87.     His act of deception caused Georgia's decision to give John Doe #1 the keys.

88.     Georgia suffered embarrassment, humiliation, emotional distress as well as the loss of her car as a result.

89.     On information and belief, John Doe #1 acted as CPS's agent and acted within the scope of his agency.

90.     CPS's conduct was willful and should be punished.

91.     CPS's conduct occurred in the course of trade or commerce.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Consumer Portfolio, Inc. and to enter an order awarding:

A.     Actual damages, in an amount to be determined at trial;

B.     Attorney's fees and costs pursuant to 815 ILCS 505/10a;

C.      Punitive damages; and

D.      Such other relief as this honorable court deems just and appropriate.

### COUNT VII
### Consumer Fraud
### Georgia v. CPS

92.     Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

93.     When John Doe #1 threatened to repossess the car, he told Georgia that if she did not provide him the keys, a charge for towing the Car would be deducted from her down payment.

94.     An auto dealership cannot deduct towing fees from down payments under Illinois law.

95.     ILCS 815 ILCS §505/2C states:

> If the furnishing of merchandise, whether under purchase order or a contract of sale, is conditioned on the consumer's providing credit references or having a credit rating acceptable to the seller and the seller rejects the credit application of that consumer, the seller must return to the consumer any down payment, whether such down payment is in the form of money, goods, chattels or otherwise, made under that purchase order or contract and may not retain any part thereof.

96.     Georgia was deceived by this threat.

97.     This false threat caused Georgia to give the key to John Doe #1.

98.     ILCS 815 ILCS §505/2 prohibits the use of "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation. . ."

99.     The threats that John Doe #1 made are an "unfair or deceptive act" in violation of ILCS 815 ILCS §505/2.

100.    On information and belief, John Doe #1 was acting as an agent of CPS.

101.    Georgia suffered embarrassment, humiliation, emotional distress, and the loss of her car as a result.

102.    This conduct was willful and should be punished.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Consumer Portfolio, Inc. and for an order awarding:

A.    Actual damages, in an amount to be determined at trial;

B.    Attorney's fees and costs pursuant to 815 ILCS §505/10a;

C.    Punitive damages, the amount of which to be determined at trial; and

D.    Such other relief as this honorable court deems just and appropriate.

**COUNT VIII**
**Consumer Fraud**
**Georgia v. CPS**

103.    Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

104.    625 ILCS §5/3-114f-5(2) states:

> With respect to the repossession of a vehicle used primarily used primarily for personal, family, or household purposes, the lienholder shall also deliver or mail to the owner at the owner's last known address an affidavit of defense. The affidavit of defense shall accompany the notice of redemption required in subdivision (f-5)(1) of this Section. The affidavit of defense shall (i) identify the lienholder, owner, and the vehicle; (ii) provide space for the owner to state the defense claimed by the owner; and (iii) include an acknowledgment by the owner that the owner may be liable to the lienholder for fees, charges, and costs incurred by the lienholder in establishing the insufficiency or invalidity of the owner's defense

105.    The vehicle was for consumer use.

106.    CPS failed to deliver an affidavit in accordance with 625 ILCS §5/3-114f-5(2).

107.    This is an unfair and deceptive practice in violation of 815 ILCS §505/2 that occurred in the course of trade or commerce.

13

108.    Georgia Foster was damaged by this because she was not alerted to the possibility of submitting an affidavit of defense and would have submitted the affidavit of defense.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Consumer Portfolio, Inc. for an order awarding:

A.    Actual damages, in an amount to be determined at trial;

B.    Punitive damages;

C.    Attorney's fees and costs pursuant to 815 ILCS §505/10a; and

D.    Such other relief as this honorable Court deems just and appropriate.

## COUNT VIV
### Conspiracy to violate Truth In Lending Act
### Georgia v. CPS, Rogers Auto

109.    Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

110.    The Truth In Lending Act ("TILA") requires that certain disclosures be listed in a closed-end transaction before consummation of the contract.

111.    The Contract was consummated. The Purchase Order states

> THIS ORDER IS BINDING ON DEALER AND WE SHALL NOT BE OBLIGATED TO SELL, UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A FINANCING SOURCE WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN THE PARTIES HERETO ON SUCH TERMS. See Exhibit A.

112.    The contract was assigned to a financing source willing to purchase the Retail Installment Sales Contract: CPS.

113.    In order to make more money off of Georgia, Rogers Auto and Consumer Portfolio entered into a conspiracy in which Rogers Auto would tell Georgia that 1) she had no contract; and 2) she could only obtain a contract with different terms with new and different Annual Percentage Rates and different Amounts Financed.

114.    This conduct subverted the protections offered by the Truth In Lending Act and Regulation Z's disclosure requirements because after the contracted was consummated Rogers Auto informed Georgia that the terms of the Retail Installment Sales Contract were subject to change. A different contract could be formed with a different creditor at a different price. Thus, the 1) Annual Percentage Rate; 2) Finance Charge; 3) Amount Financed; 4) Total of Payments were rendered meaningless.

115.    At all times relevant to this Count, CPS and Rogers Auto acted in concert. The concerted action alleged herein is a combination of two or more persons for the purpose of accomplishing an unlawful purpose, or a lawful purpose by unlawful means.

116.    At all times relevant to this Count, Defendants knowingly and voluntarily agreed to and participated in a common scheme.

117.    Both Rogers Auto and CPS are "creditors" as defined in Regulation Z, 12 C.F.R. §226.2(a)(17).

118.    The Car was purchased for general transportation purposes.

119.    Defendants' conduct was willful and should be punished.

WHEREFORE, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Consumer Portfolio, Inc. and Rogers Auto Group, Inc. for an order:

A.    Awarding statutory damages;

B.    Awarding actual damages in an amount to be determined at trial; and

C.    Awarding such further relief as the Court deems just.

### COUNT X
**Violation of the Illinois Interest Act**
**Georgia Foster v. Northwestern Premium Services, Inc.**

120.    Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

121.   When Georgia purchased the car, she had to obtain financing for auto insurance. She purchased financing from Northwest Premium Services, Inc. ("Northwest Premium") See Exhibit D.

122.   The Northwest Premium Finance Agreement Annual Percentage Rate for financing the insurance is 41.75%. *Id.*

123.   815 ILCS §205/4(1) states:

> Except as otherwise provided in Section 405, in all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any les sum of interest, shall be taken and paid upon ever $100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided. . .

124.   Northwest Premium charged well above the 9% financing charge allowed under the Illinois Interest Act, and it falls into none of the exceptions of the Act. See 815 ILCS §205/4(1).

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Northwestern Premium Services, Inc. and to enter an order awarding:

A.   Compensatory damages;

B.   Statutory damages;

C.   Attorneys' fees and costs pursuant to 815 ILCS §205/6; and

D.   Such other relief as the Court deems proper.

## COUNT XI
### Violation of Criminal Usury Statute
### Georgia v. Northwest Premium Services, Inc.

125.   Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

126.   720 ILCS §17/59 states:

> Any person commits criminal usury when, in exchange for either a loan of money or other property or forbearance from the collection of such a loan,

> he knowingly contracts for or receives from an individual, directly or
> indirectly, interest, discount or other consideration at a rate greater than
> 20% per annum either before or after the maturity of the loan.

127.    Northwest Premium knew or recklessly disregarded the fact that its loans were at

an interest rate that was above the 720 ILCS §17/59.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter

judgment against Northwestern Premium Services, Inc. and to enter an order:

A.      Declaring that the Premium Finance Agreement is unlawful and enjoining its

enforcement;

B.      Awarding restitution of amounts paid;

C.      Awarding costs of the suit; and

D.      Awarding such further relief as the Court deems proper.

### COUNT XII
**Violation of Illinois Consumer Fraud Act**
**Georgia Foster v. Northwest Premium Services, Inc.**

128.    Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

129.    Northwest Premium engaged in unfair and deceptive acts and practices in the

course of a trade or commerce in violation of 815 ILCS §505/2, by contracting for and collecting

finance charges, interest, and fees from Illinois residents, in excess of the amounts permitted by

Illinois law.

130.    Furthermore, Northwest Premium did not include the Broker Fee and Motor Club

fee in the its RISC rendering the RISC misleading. *See* Exhibit D.  Thus, Northwest Premium

Services, Inc ("Northwest Premium") engaged in unfair and deceptive acts and practices in the

course of a trade or commerce in violation of 815 ILCS 505/2.

131.    Georgia was damaged by Northwest Premium's conduct.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Northwestern Premium Services, Inc. for an order:

A.      Declaring that the Premium Finance Agreement is unlawful and enjoining its enforcement;

B.      Damages equal to the amounts collected;

C.      Punitive damages;

D.      Attorney's fees and costs; and

E.      For such further relief as the Court deems proper.

### COUNT XIII
**Georgia Foster v. Northwest Premium Services, Inc.**
**Violation of Truth in Lending Act**

132.    Paragraphs 1-35 are restated and incorporated as if fully set forth herein.

133.    Northwest Premium provided financing for insurance on a vehicle that was used for non-business purposes.

134.    On information and belief, Northwest Premium received $200 from Rogers Auto.

135.    With the 200 dollar down payment, and Premium Finance Agreement, Georgia financed a 1) $48 Broker Fee; 2) $20 Motor Club Fee; 3) Direct Auto Insurance worth 632 dollars; 4) and two $30 dollar Nation Safe Drivers policies for a total amount of $760 financed.

136.    On information and belief, Northwest Premium requires the Broker Fee.

137.    The Premium Finance Agreement was a closed-end transaction.

138.    The Premium Finance Agreement provided credit for a consumer use.

139.    The Truth In Lending Act ("TILA") requires that finance charges be listed in a closed-end transaction before consummation of the contract.

140.    The Brokers fee and Motor Club Fee are "Finance Charges" as that that term is defined in 12 C.F.R §226.4(a).

141. The $48 Broker Fee and $20 Motor Club Fee were not accounted for in the RISC. *See* Exhibit D.

142. By failing to take into account the amount of the Broker Fee and Motor Club Fee, Northwest Premium violated TILA because the RISC failed to disclose the Amount Financed as required by TILA.

143. Additionally, by failing to take into account the amount of the Broker Fee and Motor Club Fee, Northwest Premium violated TILA by providing inaccurate disclosures for a number of provisions including the total sale price and the total of payments.

Wherefore, Plaintiff Georgia Foster respectfully requests that this Honorable Court enter judgment against Northwestern Premium Services, Inc. and to enter an order:

A. Awarding statutory damages;

B. Awarding actual damages in an amount to be determined at trial;

C. Awarding attorneys' fees and costs; and

D. Awarding such further relief as the Court deems just.

Respectfully submitted,

Georgia Foster, Steve Jenkins

/s/ M. Scott Leonard
One of their attorneys

Ted Chakos
Law Office of Ted Chakos
1 W. Monroe
Chicago, Illinois 60603
Telephone: (872) 216-8350
Email: Ted@chakoslaw.com
ARDC# 6323719

M. Scott Leonard
Leonard Law Firm
ARDC# 6293219
542 S. Dearborn Street, 10th Floor
Chicago, Illinois 60605
Telephone: (312) 348-7447
Facsimile: (312) 278-0850
Email: scott@sleonardlaw.com

### **GEORGIA FOSTER AND STEVE JENKINS DEMAND TRIAL BY JURY**

### **NOTICE TO RETAIN DOCUMENTS**