UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA FOSTER-JENKINS and STEVE JENKINS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 18 C 8539 |
| ROGERS AUTO GROUP, CONSUMER PORTFOLIO SERVICES, INC., and NORTHWEST PREMIUM SERVICES, | ) ) ) ) | Judge Charles P. Kocoras |
| Defendants. | | |

## ORDER

Before the Court is Defendant Northwest Premium Services' ("Northwest") motion to dismiss Counts X through XIII of Plaintiffs Georgia Foster-Jenkins and Steve Jenkins's complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant the motion.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

This case arises out of a transaction for the sale and financing of a car, insurance premium, and the wrongful repossession of said car. Most parties and claims have been

terminated, and the only remaining claims are against Northwest, an insurance premium financing corporation in Illinois.

As relevant to this motion, Plaintiff Georgia Foster-Jenkins ("Foster-Jenkins") bought a 2014 Buick LaCrosse from Rogers Auto Group ("Rogers Auto") for $20,163.00. Foster-Jenkins executed a Retail Installment Sales Contract ("RISC") and a Purchase Order with Roger's Auto on January 26, 2018. To obtain insurance for her car, Foster-Jenkins made a down-payment and obtained financing for the rest of her insurance policy from Northwest. Plaintiffs allege Northwest set an Annual Percentage Rate ("APR") of 41.75% in the premium financing agreement ("the Agreement"). The insurance policy became effective on January 27, 2018.

In Count X of the complaint, Plaintiffs claim Northwest violated the Illinois Interest Act by charging an APR above 9% in the Agreement. 815 ILCS § 205/4(1). They claim in Count XI that Northwest violated Illinois' criminal usury statute by recklessly disregarding the fact that the interest rate in its Agreement was above 20% per year. 720 ILCS § 17/59. In Count XII, Plaintiffs claim that Northwest violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2, by not disclosing a "Broker Fee" and a "Motor Club Fee" in the RISC. They further allege that Northwest contracted for and collected finance charges, interest, and fees in amounts more than what is allowed under Illinois law, which also violated the ICFA. Finally, in Count XIII, Plaintiffs claim that Northwest violated the Truth in Lending Act ("TILA") by not disclosing the amount financed as required by TILA. They further allege that the RISC

did not account for the Broker Fee and Motor Club Fee, which rendered inaccurate the amounts disclosed in the "Amount Financed," "Total Sale Price," and "Total of Payments" provisions of the RISC.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that has factual allegations that are "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 677 (internal quotations omitted). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Northwest argues that Plaintiffs do not state a claim under TILA because their allegations are vague and conclusory. Northwest further argues that premium financing agreements are governed by Illinois' Premium Financing Law, 215 ILCS § 5/513a10, which authorizes the interest rate set forth the Agreement with Plaintiffs. Finally, Northwest argues Plaintiffs have no private right of action under Illinois' criminal usury statute, 720 ILCS § 17/59, and the maximum interest rate found in the statute does not apply to premium financing agreements.

## I. Truth in Lending Act ("TILA")

Plaintiffs claim that Northwest violated TILA by not providing the necessary disclosures required under 12 C.F.R. § 226.18. Specifically, they allege that the Broker and Motor Club Fees were not accounted for in the RISC,[1] and in doing so Northwest failed to disclose the RISC's "Amount Financed" provision as required by TILA. Plaintiffs further allege that Northwest's failure to take those fees into account rendered inaccurate the amounts disclosed in the RISC's "Total Sale Price" and "Total of Payments" provisions. Northwest contends that it was not a "creditor" under the RISC and had no obligation to make any disclosures therein. Northwest also argues that

---

[1] Plaintiffs' complaint cites to Exhibit D, which is the Premium Financing Agreement. But the Court cannot reasonably infer that the Plaintiffs meant the Premium Financing Agreement when their allegations only mention the Retail Installment Sales Contract ("RISC") and provisions exclusively found therein, e.g. "Total Sale Price," and do not mention the Premium Financing Agreement. *See* Dkt. #1, Exhibit A. Plaintiffs' responsive pleading refers to the Premium Finance Agreement and argues that the inaccurate disclosures concerned the finance charge. But the complaint does not make this allegation, and it is well established that a plaintiff cannot amend the complaint through a response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*., 631 F.3d 436, 448 (7th Cir. 2011) (noting "the axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Plaintiffs do not sufficiently allege that the fees are attributable to Northwest as a creditor. Finally, Northwest argues that neither fee qualifies as a finance charge under 12 C.F.R. § 226.4(a). The Court agrees with Northwest that it was not a creditor under the RISC, and thus could not have made and was not required to make any disclosures there.

Only creditors are bound by the disclosure requirements under § 226.18(h) of TILA. *See* 12 C.F.R. § 226.18(h). Under TILA, a "creditor" is defined as "a person who both (1) regularly extends, whether in connection with loans, sales of property, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the fact of the indebtedness." *Griffin v. U.S. Bank Nat'l Ass'n*, 2018 WL 1621024, at *3 (N.D. Ill. 2018).

Northwest is not a creditor under the Regulation's definition. The debt arising from the alleged fact-of-indebtedness, *i.e.* the RISC, is not initially payable to Northwest. Rather, that debt was payable to Rogers Auto, the party that is specified as the Seller-Creditor in the RISC. Accordingly, Plaintiffs have failed to adequately allege that Northwest violated TILA by not disclosing the fees under the RISC since Northwest had neither an obligation, nor the power, to make disclosures under a contract to which it was not a party. As such, Count XIII of Plaintiffs' complaint is dismissed.

## II. State Law Claims

Counts X, XI, and XII are all state law claims.² As a general rule, when all federal law claims are dismissed before trial, state law claims should generally be dismissed. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994). Having dismissed the only federal claim (Count XIII under TILA), the Court dismisses the state law claims as well. *Anderson v. Lincoln Ins. Agency Inc.*, 2003 WL 291928, at *3 (N.D. Ill. 2003).

## **CONCLUSION**

For the reasons mentioned above, the Court grants Defendant's motion. It is so ordered.

Dated: 09/30/2019

Charles P. Kocoras

United States District Judge

---

² These claims appear to involve a question of first impression under Illinois Law: whether the Interest Act, as opposed to the Insurance Premium Finance Act, governs interest rates set in insurance premium financing agreements. Resolving this question will require the Court to interpret state law, but "[w]here there are conflicting lines of precedent interpreting the state law, or where the matter is one of first impression, districts courts will generally decline to exercise supplemental jurisdiction." *Quinn v. Village of Elk Grove Village Board of Fire and Police Com'rs*, 2002 WL 47157 (N.D. Ill. 2002) (*citing American Society of Consultant Pharmacists v. Patla*, 138 F.Supp. 1062 (N.D.Ill.2001)).